IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COEUR D'ALENE TRIBE, )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>DIRK KEMPTHORNE, )<br>Secretary of the Interior, *et al.*, )<br>)<br>   Defendants. )<br>_____) | Case No. 1:06-cv-02242-JR |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR REMAND AND STAY OF LITIGATION**

Pursuant to paragraph 1 of the Court's August 23, 2007 Order, Dkt. No. 16, plaintiff, the Coeur d'Alene Tribe ("Plaintiff" or "Coeur d'Alene Tribe"), by counsel, respectfully submits this Supplemental Memorandum in Opposition to Defendants' Motion for Remand and Stay of Litigation. In addition to the arguments set forth in the October 2, 2007 Joint Memorandum in Opposition to Defendants' Motion for Remand and Stay of Litigation ("Principal Brief"), Plaintiff's ongoing participation in the Tribal Trust Fund Settlement Project ("TTFSP" or "Project") renders a remand in this particular case especially improper.

I.     **BACKGROUND ON THE TTFSP**

The TTFSP is a cooperative undertaking currently underway between the Intertribal Monitoring Association on Indian Trust Funds ("ITMA") and the Office of Historical Trust Accounting ("OHTA"), an office within the Department of the Interior.[1] Founded in 1990,

---

[1] A comprehensive explanation of the TTFSP, together with applicable citations to the record, is set forth in Plaintiff's Unopposed Motion to Extend Temporary Stay of Proceedings and accompanying papers. (Dkt. No. 12). The pertinent background and current status of the TTFSP is, therefore, presented here only in summary form.

ITMA is a national nonprofit tribal consortium, the membership of which is comprised of 65 Indian tribes. The Coeur d'Alene Tribe is a member of ITMA. ITMA's mission, among other things, includes monitoring the Department of the Interior's trust reform efforts and providing a forum for tribal consultation on trust-related issues.

In May 2003, the Department of the Interior approached ITMA to explore the possibility of entering into a cooperative undertaking that could assist in resolving tribal trust-related claims. Following 19 months of negotiation, ITMA and OHTA entered into a Cooperative Agreement ("Cooperative Agreement") to establish the TTFSP in December 2004. Plaintiff and six other federally recognized Indian tribes agreed to participate as the "pilot project" tribes for the TTFSP. The other six participating tribes are the Sac and Fox Nation (Oklahoma), Fort Belknap Indian Community (Montana), Pueblo of Picuris (New Mexico), Confederated Tribes and Bands of the Yakama Indian Nation of the Yakama Reservation (Washington), the Confederated Tribes of the Colville Reservation (Washington), and the Nez Perce Tribe (Idaho). These tribes were selected, in part, to ensure that the Project included a geographically diverse range of Indian tribes with varying land bases, natural resources, and trust accounts to better ensure that any methodology developed under the TTFSP would be as inclusive and representative of Indian tribes nationwide as possible.

The main goals of the TTFSP are to provide Indian tribes with a voluntary mechanism to determine the possibility of reaching settlement of certain tribal trust fund-related issues and claims, and to provide tribes and Defendants with a framework for resolving broader trust-related issues. The scope of the TTFSP is limited to 1972 through 1992—the years covered by the tribal trust fund reports prepared by the Arthur Andersen accounting firm in the early 1990s. *See* Principal Brief at pp. 22-28 (description of Department of the Interior's engagement with Arthur

Andersen LLP). Nevertheless, ITMA, OHTA, and the Coeur d'Alene Tribe have expressed openness and receptivity to the possibility that if the tribal participants are satisfied with the outcome of the TTFSP, they might be able to agree upon an extrapolation or some form of adaptation of the TTFSP methodology to address other time periods and other types of trust-related claims.

The Cooperative Agreement encompasses two phases to the TTFSP. Phase I consists of developing a methodology for utilizing the information contained in the reports prepared by Arthur Andersen LLP for the seven tribes participating in the Project. Completion of Phase I requires the concurrence of ITMA, each participating tribe, and OHTA. In Phase II, the Phase I methodology will be made available for use by any interested Indian tribes on a voluntary basis.

Phase I of the TTFSP is nearing completion.[2] ITMA and OHTA have been and continue to formulate, review, and provide comments on draft methodological approaches for examining receipts, disbursements, and investments, which are major areas of inquiry proposed for the TTFSP. ITMA and OHTA recently extended the Cooperative Agreement into Fiscal Year 2008 and are working together to develop a more detailed plan and budget for proceeding with the TTFSP.

## II. THE PROGRESS MADE BY THE TTFSP DEMONSTRATES THAT DEFENDANTS CANNOT BE RELIED UPON TO DEVELOP THEIR OWN ACCOUNTING PLAN WITHIN SIX MONTHS

The TTFSP is a unique, tribally driven undertaking that affords the seven participating Indian tribes direct input in the formulation of a methodology that may, once complete, be used to resolve tribal accounting and funds mismanagement claims, should the individual tribes so

---

[2] Defendants state in their Remand Motion that "[t]o date, the [TTFSP] has produced a draft methodology that proposes to test disbursements, evaluate investments and assess the completeness of tribal accounts." Remand Motion at 15. This statement is misleading because it implies that ITMA, OHTA, and the seven participating tribes have produced a *complete* draft methodology. Although the parties continue to make progress and narrow their differences, the draft methodology remains unfinished.

3

choose. As comprehensively detailed in the Principal Brief, Defendants have, on their own, utterly failed to develop any semblance of an accounting plan to provide Indian tribes with accountings of their trust funds and trust assets. Indeed, Defendants' mention in their Memorandum in Support of Defendants' Motion for Remand and Stay of Litigation, Dkt. No. 13 ("Remand Motion"), of the TTFSP and the draft methodology being developed therein is the *only* tangible product to which Defendants can point to demonstrate any progress in developing an accounting plan.

The progress made on the tribally driven TTFSP during the last three years eclipses any of Defendants' efforts to develop an accounting plan or to provide Indian tribes with accountings. This alone negates Defendants' assertions in their Remand Motion that they can complete a historical accounting plan for not only Plaintiff's trust funds, but also Plaintiff's trust assets, within six months. Without tribal involvement, Defendants have consistently and historically failed to do either.

### III. A REMAND IN THIS PARTICULAR CASE WOULD INTERFERE WITH THE TTFSP AND WOULD FRUSTRATE RESOLUTION OF PLAINTIFF'S CLAIMS

Should the Court grant Defendants' motion, the Defendants will likely do one of two things: (1) halt the TTFSP entirely, effectively wasting the resources that the Coeur d'Alene Tribe, ITMA, the six participating tribes, and the United States have invested in the Project since 2004; or (2) continue with the TTFSP while Defendants unilaterally develop a separate, perhaps duplicative or even perhaps inaccurate accounting plan that will surely be challenged by the Coeur d'Alene Tribe and the other tribes with pending accounting claims against the United States—assuming, of course, that an accounting plan is ultimately completed. Neither of these contingencies promotes resolution of the claims at issue in this particular case, and the Court should, therefore, deny Defendants' motion.

To grant the Defendants' Remand Motion, and possibly halt the TTFSP, would eviscerate and render wasted the past and ongoing commitment of resources to the TTFSP by Plaintiff and the six other participating tribes. The Coeur d'Alene Tribe's allocation of resources to the TTFSP has been substantial. During the past three years, the Coeur d'Alene Tribe's elected officials (including its Chairman), accountants, and legal counsel have attended numerous meetings and multiple, daylong work sessions in an effort to develop the Phase I methodology. The Coeur d'Alene Tribe has also invested significant tribal staff resources reviewing tribal documents and associated data to ensure that the draft methodology is as accurate as possible as it relates to those particular trust resources from the which the Coeur d'Alene Tribe derives the majority of its trust revenue.

It also bears mention that, as a component of the TTFSP, ITMA has contracted with various experts to advise it and the participating tribes on the development of the methodology. These experts include, among others, forensic accountants and other professionals and consultants with experience working with tribal trust records. The United States government has provided the majority of the funding for these professionals and for the TTFSP generally. ITMA, however, selected the professionals it retained to advise ITMA and the participating tribes independently, and was not required to obtain prior approval from OHTA before selecting any of them. In addition to wasting the resources of Plaintiff and the participating tribes, to remand the proceedings back to the Department of the Interior and risk termination of the TTFSP also risks wasting the efforts of these professionals and the taxpayer dollars that funded them.

Alternatively, should the Court grant the Remand Motion and the Defendants proceed with the TTFSP, any accounting plan developed by Defendants outside the TTFSP and without

input from the Coeur d'Alene Tribe will almost certainly be challenged by the Coeur d'Alene Tribe as insufficient. Therefore, it makes little sense in this particular case to grant Defendants' motion and order Defendants to develop and submit an accounting plan to the Court within six months.

Finally, it must be emphasized that under the Cooperative Agreement and the amendments thereto, any methodology developed under Phase I of the TTFSP must be approved by Plaintiff, the six other participating tribes, ITMA, and OHTA. The Coeur d'Alene Tribe (and the other tribal participants to the TTFSP) has participated in the Project in good faith based on this common understanding. Should the Court grant Defendants' Remand Motion and the Defendants seek to utilize the unfinished draft methodology from the TTFSP and incorporate the methodology (or elements thereof) into any accounting plan it submits to the Court, any such accounting plan will almost certainly face the ire of the TTFSP tribes. Plaintiff fully expects that Defendants would not consider such a bad faith use of the TTFSP work product. Should the Court grant Defendants' motion and the Defendants proceed down this road, however, such an outcome would add a new element to what will likely be a chorus of tribal objections to any accounting plan that Defendants unilaterally develop.

## CONCLUSION

In addition to the arguments set forth in the Principal Brief, Plaintiff's ongoing participation in the TTFSP makes this case unique and renders any remand particularly inappropriate, duplicative, and wasteful of the parties' resources. The Court should, therefore, deny Defendants' motion.

Respectfully submitted on this 22nd day of October, 2007,

_____/s/_____
ALLEN V. FARBER, DC Bar #912865
BRIAN L. GUNN, DC Bar #465438
Drinker Biddle & Reath LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
Tel: (202) 230-5000
Fax: (202) 230-5300

ERIC R. VAN ORDEN (*pro hac vice*)
Office of Legal Counsel
The Coeur d'Alene Tribe
850 A Street
Plummer, ID 83851
Tel: (208) 686-1800
Fax: (208) 686-1182

ATTORNEYS FOR PLAINTIFF

DC01/ 532833.1